# Exhibit 1

**STATE OF MICHIGAN**
**36th JUDICIAL CIRCUIT IN AND FOR VAN BUREN COUNTY**
212 Paw Paw Street, Paw Paw, MI 48079; (269) 657-8218

JAMES J. MEYER, &
CHERYL A. MEYER,

  Plaintiffs,

16-060465-NO

vs.

DENNIS M. TUSHLA, and
O'CONNOR & TUSHLA / O'CONNOR,
TUSHLA & FRENCH, jointly and severally,

  Defendants.
_____ /

Frank B. Melchiore (P41238)
LAWFM
Counsel for Plaintiffs
535 Central Avenue, Suite 306
Saint Petersburg, Florida 33701
(727) 822-5900

_____ /

> There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

## PLAINTIFFS' COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs, James J. Meyer and Cheryl A. Meyer, by and through counsel, and for their Complaint against the Defendants, Dennis M. Tushla, and O'Connor & Tushla / O'Connor, Tushla & French, state as follows:

1. Defendant Tushla is a lawyer licensed in the State of Michigan with "P" number 21639, who apparently resides in the City of Prescott, Yavapai County, Arizona; bragged on his experience and expertise drafting, creating and overseeing trusts, pompously.

2. Defendant, O'Connor & Tushla / O'Connor, Tushla & French, is a law firm practicing in the State of Michigan, which employs Defendant Dennis M. Tushla, and in which

Defendant Tushla is a partner/shareholder/owner/principal/agent. Based on this status, all conduct, acts and omissions by Defendant Tushla are imputed to the entity/entities, Defendant, O'Connor & Tushla / O'Connor, Tushla & French.

3. Plaintiff, James J. Meyer, is an individual residing in the City of Palos Hills, Cook County, Illinois. He is married to Plaintiff, Cheryl A. Meyer. He is not a lawyer; trusted Defendants Tushla because Tushla bragged on his experience and expertise drafting trusts, and trusted Tushla because of James J. Meyer's respect for his parents, Otto and Margaret Meyer, who chose Defendants as their lawyer many years ago.

4. Plaintiff, Cheryl A. Meyer, is an individual residing in the City of Palos Hills, Cook County, Illinois. She is married to Plaintiff, James J. Meyer. She is not a lawyer; trusted Defendants Tushla because Tushla bragged on his experience and expertise drafting trusts, and trusted Tushla because of Cheryl's respect for James J. Meyer's parents, Otto and Margaret Meyer, who chose Defendants as their lawyer many years ago.

5. The acts and omissions complained of occurred in, among locations, Van Buren County, Michigan, and venue is proper in Van Buren County Circuit Court pursuant to MCL 600.1627 & 1629.

6. The amount in controversy exceeds $25,000.00, exclusive of interest, costs and attorney fees.

## FACTUAL ALLEGATIONS

7. Defendant Tushla drafted the Otto William Meyer ("Otto") and Margaret Anne Meyer ("Margaret") Revocable Trust Agreement on October 7, 1993 ("The Trust").

8. The Trust was funded with assets in which Otto and Margaret Meyer both had an interest.

9. Otto and Margaret had five children: John Michael Meyer, Joseph Peter Meyer, Janet Anne Laux, Jean Linda Adams and Plaintiff, James Jude Meyer.

10. The Trust was drafted by Defendant Dennis Tushla, an owner, agent, shareholder, principal of Defendants, O'Connor & Tushla / O'Connor, Tushla & French.

11. In his Affidavit dated February 17, 2015, Defendant Tushla stated that he believed it was the intent of Otto and Margaret to draft The Trust *"to maximize the use of their federal exemptions from estate taxes which would minimize their estate tax obligation, if any, after the death of the survivor of them. And to avoid or minimize probate administration."*

12. The intent was evidenced by Defendant Tushla's use of an "A/B Credit Shelter Trust," which would require the division of The Trust's assets into a "Marital Trust" and a "Family Trust" upon the death of the first spouse, in an effort to "reduce the Federal Estate Tax payable by the estate to zero" and provide for the largest amount possible to pass free of Federal Estate Tax.

13. The Trust did indicate that the Settlors could amend or revoke The Trust during their lifetime, and that The Trust will become irrevocable upon the death of one of the Settlors.

14. On December 22, 1994, Defendant Tushla drafted the First Amendment to the Otto William Meyer and Margaret Anne Meyer Revocable Trust Agreement dated October 7, 1993.

15. The First Amendment was drafted by Defendant Tushla to restate the intent of Otto and Margaret to preserve their assets from estate tax liability to every extent allowable, but amended the dispositive provisions of the Trust to distribute to four of their children instead of five, through the elimination of their son, John Michael Meyer.

16. Otto Meyer died on October 6, 2005.

17. Per The Trust created by Defendant Tushla, when one of the settlors (Otto or Margaret) died, the trust became irrevocable:
*Upon the death of one of the SETTLORS, this Trust shall be irrevocable. All property then a part of the Trust and all property thereafter added to the Trust shall be held, administered and distributed to the beneficiaries previously named.*
The trust document additionally provided that the trust could be amended only if both settlors agreed about the amendment:
*The SETTLOR may amend or revoke this Agreement, or any part of it, provided both SETTLORS are in Agreement with the amendment, or revocation at any time by writing.*

18. Per The Trust created by Defendant Tushla, upon Otto's death, The Trust required the successor trustee, Margaret, to divide the property held by The Trust into two separate Trusts, a "Spouse's Trust" and a "Family Trust".

19. The Spouse's Trust was required to "consist of a sum equal to the amount necessary to reduce the Federal Estate Tax payable by [Otto's] estate to zero, or if that is not possible, to a minimum," using only the "property that qualifies for the Federal Estate Tax marital deduction."

20. The Family Trust was to be comprised of "the largest amount that can pass free of Federal Estate Tax under this Trust, without taking into account the marital deduction," using the assets that came from Otto's residuary estate.

21. Despite the clear mandate/dictate/requirement/term of The Trust, Defendant Tushla never divided the Trust assets into a Spouse's Trust and a Family Trust, and Defendant Tushla never disclosed or communicated to the Settlors/beneficiaries his failure to comply with this term of The Trust.

22. Following the 2005 death of his father Otto, Plaintiff James Meyer began taking great personal care of his mother, Margaret, with extensive assistance from his wife, Plaintiff

Cheryl Meyer.

23. In his Affidavit dated February 17, 2015, Defendant Tushla stated that, "Margaret Meyer contacted me regarding The Trust in 2011 to make changes in her trust due to the death of Otto Meyer on October 6, 2005. The intent of Margaret Meyer in October 2011 was to leave the real estate to James Mayer and the residue to the other three children."

24. On September 20, 2011 Defendant conferenced with Margaret Meyer and Plaintiff James Meyer "regarding revisions to estate plan....amending trust.... and preparation of second amendment to trust," billing Margaret for that conference.

25. The Second Amendment to The Trust was then drafted by Defendant Tushla, signed by Margaret and notarized by Defendant Tushla on October 3, 2011.

26. As described by Defendant Tushla to them, and stated in the Second Amendment of The Trust drafted by Defendant Tushla, Margaret and Plaintiff James Meyer believed the dispositive provisions of the Trust in the Second Amendment were clear that Margaret specifically gave the home /real estate / property located at Christie Lake to her son, James Meyer, who had been her primary caregiver for the last six years following Otto's death. Margaret further gave the remaining assets to three of her children, Joseph Peter Meyer, Janet Anne Laux and Jean Linda Adams, in equal shares of one-third each.

27. In fact and at law however, Defendant Tushla's second trust amendment was invalid because the trust became irrevocable at Otto's death, and was irrevocable when Defendant Tushla had Margaret "execute it," (*i.e.* the purported Second Amended Trust) with Defendant Tushla even notarizing Margaret's signature. *Laux v Meyer, et. al.*, MI COA Case 326894; LC Case 2014-000002-CZ.

28. Defendant Tushla's Second Amendment of The Trust had no legal effect; The Second Amendment of Trust was consequently prepared, executed, and "sold" to Margaret and James Meyer contrary to the instructions of Defendants' clients.

29. Short of extreme recklessness/fraud by the Defendants, it was impossible for Defendants not to know that the second trust amendment was invalid because The Trust became irrevocable at Otto's death, and remained invalid / irrevocable when Defendant Tushla had Margaret execute the purported Second Amended Trust that he drafted.

30. Short of extreme recklessness/fraud by the Defendants, it was impossible for Defendants not to disclose and inform Margaret and James Meyer that the second trust amendment was invalid because The Trust became irrevocable at Otto's death, and remained invalid / irrevocable when Defendant Tushla had Margaret execute the purported Second Amendment to the Trust.

31. Short of extreme recklessness/fraud by the Defendants, it was impossible for Defendants not to advise, ever, Margaret and James Meyer of the factual, legal, and tax consequences given that the second trust amendment was invalid from its inception and that it would

always remain invalid because of Defendants' conduct in the creation and purported Second Amendment of The Trust.

32. In so failing to ever advise Margaret and James Meyer that the Second Amendment was invalid, Defendants recklessly, fraudulently concealed – for years - the invalidity of that Second Amendment, as well as the failures and fraud by Defendants in both drafting the Second Amendment and then holding out that Second Amendment as valid/enforceable.

33. Plaintiffs James Meyer, sometimes with his wife, Plaintiff Cheryl Meyer consulted with Defendant Tushla regarding: asset management per the terms of the Second Amendment; providing care for Margaret prior to her death: issues relating to James Meyer's status as successor trustee under the terms of the Second Amendment.

34. Margaret Meyer died on September 14, 2013.

35. At no time did Defendants seek a timely (such as during Margaret's lifetime) reformation of The Trust which would comport with the Second Amendment of The Trust, including relief from a court; deeding property out of Trust; nor did Defendants ever seek to advise Margaret or James Meyer, or any sibling-beneficiaries that there was no way to accomplish the terms of the Second Amendment of The Trust.

36. Defendants proceeded as though the Second Amendment of The Trust was valid and in effect. In fact and by law, it was neither. *Laux v Meyer, et. al.*, MI COA Case 326894; LC Case 2014-000002-CZ.

37. At no time during any of the consultations with James Meyer, or ever, did Defendant Tushla or any Defendant inform or disclose to James Meyer that there was no law, that there was no application of facts to law that would ever make the Second Amendment to The Trust, as drafted by Tushla, valid or enforceable; that transferring the real property (Christie Lake home) to James Meyer per the [invalid] terms of the Second Amendment to the Trust would have no legal effect, wouldn't work.

38. At no time during any of the consultations with James Meyer, or ever, did Defendant Tushla or any Defendant advise or disclose to James Meyer that he should seek advice from a competent professional on what options were available to put into effect Margaret's intentions and wishes for The Trust/ Trust assets.

39. At no time during any of the consultations with James Meyer, or ever, did Defendant Tushla or any Defendant inform or disclose to James Meyer that, tragically, all of the flagellations, stress, mental anguish, destroyed family relationships; all of the lost time, money, assets, relationships caused by the dead-on-arrival Second Amendment of The Trust as drafted by Tushla were avoidable.

40. In the face of knowing/recklessly disregarding that the Second Amendment of The Trust, as drafted by Tushla, was invalid, unenforceable, a sham, Plaintiffs James and Cheryl Meyer met with Defendant Tushla in September 2013 during which time Tushla

nonetheless prepared two quitclaim deeds for the Christie Lake property for execution by James Meyer as successor trustee under the terms of invalid Second Amendment. The first deed conveyed the property from the Trust to James Meyer individually, per the terms of the purported Second Amendment. The second deed conveyed James Meyer's interest in the property to James and Cheryl Meyer as husband and wife.

41. Defendant Tushla then informed James and Cheryl Meyer of his intention to record the two quitclaim deeds conveying the Christie Lake property under the terms of Tushla's Second Amendment of The Trust.

42. Accountant, Becky Moore, was called in to assist with tax matters in regard to the Trust, contacted Defendant Tushla and advised him to delay recording the deeds until after January, 2014 in light of pending legislation and the tax consequences it would have on, among other things, conveyances to and from a Trust and between family members.

43. On or about November 18, 2013, Defendant Tushla sent to the Interested Parties an Accounting for the Trust.

44. Then, on or about November 26, 2013, Attorney Joseph Mills sent a letter to Defendant Tushla advising him that Mills had been consulted by Janet Anne Laux, of The Trust's beneficiaries and a sister of James Meyer. The siblings formally objected to The Trust accounting, and specifically asserted that The Trust became irrevocable upon the death of Otto, and therefore the Second Amendment and subsequent distribution of the Christie Lake property to James Meyer were all invalid.

45. The beginning of the end of family relationships between James Meyer and his sibling-beneficiaries of The Trust was thereby launched, irretrievably, caused by the conduct of the Defendants' drafting and attempted foist implementation of the invalid, sham Second Amendment of The Trust.

46. Upon receipt of the letter from Attorney Mills, Defendant Tushla contacted James and Cheryl Meyer and requested a meeting with them.

47. James and Cheryl Meyer met with Attorney Tushla on or about December 17, 2013, at which time he advised them that he could no longer represent them due to a conflict, and that he would make a better witness to attest to Margaret's intention when she signed the Second Amendment to the Trust. Attorney Tushla then referred James and Cheryl Meyer to Attorney Harold Schuitmaker.

48. At no time during any of the consultations with James Meyer, or ever, did Defendant Tushla or any Defendant inform or disclose to James Meyer and/or Cheryl Meyer that Tushla's offer to provide witness testimony as to Margaret's intentions - after her death – was an untimely offer; that any "conflict" on the Defendants' part was long-standing given the invalidity of the Second Amendment of Trust from its inception; that it was too late to breathe life into the terms of the Second Amendment of Trust transferring the Christie Lake Property to James Meyer. Such concealment of facts, issues, and claims was

fraudulent, reckless.

49. On December 19, 2013, James and Cheryl Meyer retained Harold G. Schuitmaker, Esq.

50. Shockingly, on or about January 15, 2014, Jim and Cheryl received a letter from Attorney Tushla providing them with the quitclaim deeds to transfer the Christie Lake property that Defendant Tushla, unbelievably, had recorded on January 8, 2014.

51. That Attorney Tushla proceeded to record the deeds after he was advised by Attorney Mills the siblings intended to question the validity of the Second Amendment and the transfer of the property, after James and Cheryl Meyer retained Attorney Harold Schuitmaker, after the wake-up call contained in Attorney Mills' letter, after creating an increase in the tax burden on the Trust and/or James Meyer, is all telling of the extreme recklessness / fraud committed by Defendants on James Meyer, Cheryl Meyer and Margaret Meyer.

52. On September 30, 2014, the siblings sued The Trust, seeking to nullify the second trust amendment and distribute the trust principal in accordance with the first amended trust.

53. In February 2015, the siblings moved for summary disposition under MCR 2.116(C)(8), (9), and (10). At the hearing on the motion, the trial court noted that it had to interpret the trust documents by giving intent to the settlors, and the language of the trust was the best indicator of the settlors' intent.

54. Because there was no ambiguity in the trust document, the trial court determined the settlors' intent solely from the trust document, and that the trust clearly stated that after the death of one spouse, the trust became irrevocable.

55. The trial court determined that while Margaret could use the trust principal for her support, that was not the same as being able to revoke or modify the trust; there was no evidence that the settlors were operating under a mistake of fact or law; and that modifying the trust would not further the settlors' stated purposes.

56. The trial court thus determined that the second trust amendment was invalid because the trust was irrevocable when Margaret purported to execute it, and the trial court granted the siblings' motion for summary disposition under MCR 2.116(C)(10).

57. The Trust and Plaintiffs herein appealed the trial court's ruling.

58. In March 2016, the Court of Appeals affirmed the trial court's findings that Defendant Tushla's second trust amendment was invalid because the trust became irrevocable at Otto's death, and was irrevocable when Defendant Tushla had Margaret "execute it," (*i.e.* the purported Second Amended Trust) with Defendant Tushla even notarizing Margaret's signature. *Laux v Meyer, et. al.*, MI COA Case 326894; LC Case 2014-000002-CZ.

59. Adding to Plaintiffs' mental anguish and economic losses, the Court of Appeals also stated that: *As the prevailing parties, the siblings may tax costs. MCR 7.219(A).*

60. Because the Second Amendment of The Trust was invalid/with no legal effect as drafted by Defendant Tushla, Defendants' acts to advance the Second Amendment constituted a fraud upon the Courts, a fraud upon The Trust beneficiaries, a fraud upon Defendants' clients, a breach of Defendants' fiduciary duties, a violation of the Defendants' standard of care as attorneys, and created a conflict of interest between beneficiaries, Margaret Meyer and The Trust....all of which mandated full and timely disclosure, and which disclosure was never made or given.

61. As a direct and proximate cause/result of this fraud and these violations by Defendants, Plaintiffs have suffered actual economic and non-economic damages.

## COUNT I - FRAUD/FRAUDULENT CONCEALMENT/MISREPRESENTATION

62. Plaintiffs adopt and incorporate herein by reference each and every allegation contained in the paragraphs above, as though fully stated herein.

63. That all Defendants, by their statements and by their actions made material representations to Plaintiffs, James and Cheryl Meyer, including, but not limited to: that the Second Amendment of The Trust was valid and enforceable; that the Second Amendment of The Trust gives the Christie Lake real estate / property / home exclusively to James Meyer; that James Meyer's status as successor trustee was authorized by law under the terms of the Second Amendment of The Trust to include certain tasks including accounting for all Trust assets, providing an Account of Fiduciary, making distributions – such as the Christie Lake Property to himself; the physical preparation, notarization, and presentation of the actual Deeds transferring the Christie Lake real estate / property to James Meyer under the terms of the [invalid] Second Amendment of Trust; the actual recording of the actual Deeds transferring the Christie Lake real estate / property to James Meyer per the terms of the [invalid] Second Amendment of Trust; that the Second Amendment of Trust would maximize the tax advantages and minimize any probate litigation to the Meyer Family/trust beneficiaries; that Defendant Tushla bragged that he had forty years of practice behind him, that he knew trusts like nobody's business and that his trusts, like The Meyer Trust were like his children that he gives life to and makes them grow; and others to be disclosed during the course of this case.

64. These representations by Defendants were false.

65. That when Defendants made these representations, Defendant Tushla knew that these representations were false, and/or Tushla made these representations recklessly, without any knowledge of their truth, and/or disregarding the law and the facts, all as a positive assertion.

66. Defendant Tushla's Second Amendment of The Trust had no legal effect; The Second Amendment of Trust was consequently prepared, executed, and "sold" to Margaret and James Meyer contrary to the intentions of Defendants' clients.

67. Other than extreme recklessness/fraud by the Defendants, it was impossible for Defendants not to know that the second trust amendment was invalid because The Trust became irrevocable at Otto's death, and remained invalid / irrevocable when Defendant Tushla had Margaret execute the purported Second Amended Trust that he drafted.

68. Other than extreme recklessness/fraud by the Defendants, it was impossible for Defendants not to disclose and inform Margaret and James Meyer that the second trust amendment was invalid because The Trust became irrevocable at Otto's death, and remained invalid / irrevocable when Defendant Tushla had Margaret execute the purported Second Amendment to the Trust.

69. Other than extreme recklessness/fraud by the Defendants, it was impossible for Defendants not to advise, ever, Margaret and James Meyer of the factual, legal, and tax consequences given that the second trust amendment was invalid from its inception and that it would always remain invalid because of Defendants' conduct in the creation and purported Second Amendment of The Trust.

70. Because the Second Amendment of The Trust was invalid/with no legal effect as drafted by Defendant Tushla, Defendants' acts to advance the Second Amendment constituted a fraud upon the Courts, a fraud upon The Trust beneficiaries, a fraud upon Defendants' clients, a breach of Defendants' fiduciary duties, a violation of the Defendants' standard of care as attorneys, and created a conflict of interest between beneficiaries, Margaret Meyer and The Trust....all of which mandated full and timely disclosure, and which disclosure was never made or given.

71. In so failing to ever advise Margaret and James Meyer that the Second Amendment was invalid, Defendants recklessly, fraudulently concealed – for years - the invalidity of that Second Amendment, as well as the failures and fraud by Defendants in both drafting the Second Amendment and then holding out that Second Amendment as valid/enforceable.

72. That Defendants made these representations, including said concealment, with the intent that they should and/or would be acted upon by Plaintiffs.

73. Defendants charged and expected money for their stated acts.

74. That Plaintiffs acted in reliance upon these representations, either in whole or in part and thereby suffered recurring, continuous and irreparable injuries and damages that include, but that are not limited to:

>    A. Loss of economic assets, funds & the lost value of those funds;
>    B. Lost opportunity to obtain assets, funds, to use those assets and funds;
>    C. Costs & attorney fees;
>    D. Loss of consortium and family relationships;
>    E. Emotional anxiety & distress;
>    F. Depression;

  G. Loss of enjoyment of life;
  H. Mental anguish;
  I. Loss of ability to pursue their legal rights;
  J. Embarassment, humiliation & mortification;
  K. Other and additional damages to be disclosed in the course of litigation.

WHEREFORE, Plaintiffs, James Meyer and Cheryl Meyer, respectfully request and pray that this Honorable Court will enter judgment in their favor, against the Defendants, jointly and severally, in an amount which is fair and equitable in excess of $25,000.00, plus costs, interest and attorney fees and whatever additional damages to which Plaintiffs are rightly entitled.

ADDITIONALLY, and due to the egregious nature of the fraudulent conduct and concealment of same by Defendants. and the harm thereby caused to befall these Plaintiffs, James Meyer and Cheryl Meyer, respectfully request and pray that this Honorable Court will enter judgment for exemplary damages in their favor, against the Defendants, jointly and severally, in an amount which is fair and equitable in excess of $1,000,000.00, plus costs, interest and attorney fees and whatever additional damages to which Plaintiffs are rightly entitled.

## COUNT II - BREACH OF FIDUCIARY DUTIES

75. Plaintiffs adopt and incorporate herein by reference each and every allegation contained in the paragraphs above, as though fully stated herein.

76. Under Michigan law, including but not limited to MCL 700.1212, an attorney stands in a position of confidence and trust with respect to each heir, devisee, beneficiary, protected individual, or ward for whom the person is a fiduciary. A fiduciary shall observe the standard of care described in section 7803 and shall discharge all of the duties and obligations of a confidential and fiduciary relationship, including the duties of undivided loyalty; impartiality between heirs, devisees, and beneficiaries; care and prudence in actions; and segregation of assets held in the fiduciary capacity. With respect to investments, a fiduciary shall conform to the Michigan prudent investor rule.

77. Attorneys owe fiduciary duties to their clients, and to beneficiaries of a testamentary plan by which the decedent's intended disposition of property will be accomplished; such duties to entail the drafting of a valid single testamentary document, or it might require the establishment of a more complex valid testamentary design by drafting, execution and litigation.

78. As a named beneficiary of The Trust, Plaintiff James Meyer, as well as named sibling-beneficiaries, were owed fiduciary duties by Defendants since at least 1993, the year that Defendants drafted and created The Trust.

79. Such fiduciary duties include duties to comply with the applicable standard of care and practice to provide competent legal evaluation, recommendations, advice, services,

honesty, candor, information, consultation, and representation that arise out of the very special relationship derived from the retention of attorney by a client - and this case – as extended to trust beneficiaries involving legal issues, such as those addressing/involving developing valid testamentary plans; drafting, creating and executing valid testamentary documents; timely identification/inventory of assets; timely management of assets; timely and valid amendments, revocation, reformation of testamentary documents; timely notifications; timely, accurate and intended distribution of involved assets; timely involving competent professionals to assist in meeting these duties and responsibilities; timely referring clients and beneficiaries to competent professionals in the event of conflict(s) of interest and/or lack of competence; always keeping the best interests of their clients and beneficiaries of testamentary plans in mind; providing full and complete information and disclosures to their clients and beneficiaries; refraining from making any reckless or false representations; refraining from filing and/or recording non-meritorious documents and deeds; reducing the costs and fees incurred, amongst others.

80. Defendants breached these duties as set forth above including that Defendant Tushla's Second Amendment of The Trust was invalid / had no legal effect and ignited a cascade of injuries, damages, and contentious conflicts not limited to litigation; The Second Amendment of Trust was consequently prepared, executed, and "sold" to Margaret and James Meyer by Defendants contrary to the intentions of Defendants' clients.

81. Because the Second Amendment of The Trust was invalid/with no legal effect as drafted by Defendant Tushla, Defendants' acts to advance the Second Amendment constituted a fraud upon the Courts, a fraud upon The Trust beneficiaries, a fraud upon Defendants' clients, a breach of Defendants' fiduciary duties, a violation of the Defendants' standard of care as attorneys, and created a conflict of interest between beneficiaries, Margaret Meyer and The Trust....all of which mandated full and timely disclosure, and which disclosure was never made or given.

82. As a direct and proximate result of the breaches of fiduciary duties by Defendants, jointly and severally, and as a result of the failures outlined herein, including those arising from the acts of malpractice and fraud, the Plaintiffs, have suffered damages which include, but are not limited to:

   A. Loss of economic assets, funds & the lost value of those funds;
   B. Lost opportunity to obtain assets, funds, to use those assets and funds;
   C. Costs & attorney fees;
   D. Loss of consortium and family relationships;
   E. Emotional anxiety & distress;
   F. Depression;
   G. Loss of enjoyment of life;
   H. Mental anguish;
   I. Loss of ability to pursue their legal rights;
   J. Embarrassment, humiliation and mortification
   K. Other and additional damages to be disclosed in the course of

litigation.

WHEREFORE, Plaintiffs, James Meyer and Cheryl Meyer, respectfully request and pray that this Honorable Court will enter judgment in their favor, against the Defendants, jointly and severally, in an amount which is fair and equitable in excess of $25,000.00, plus costs, interest and attorney fees and whatever additional damages to which Plaintiffs are rightly entitled.

ADDITIONALLY, and due to the egregious nature of the fraudulent conduct and concealment of same by Defendants, and the harm thereby caused to befall these Plaintiffs, James Meyer and Cheryl Meyer, respectfully request and pray that this Honorable Court will enter judgment for exemplary damages in their favor, against the Defendants, jointly and severally, in an amount which is fair and equitable in excess of $1,000,000.00, plus costs, interest and attorney fees and whatever additional damages to which Plaintiffs are rightly entitled.

## COUNT III - NEGLIGENT CLIENT REPRESENTATION (Malpractice)

83. Plaintiffs adopt and incorporate herein by reference each and every allegation contained in the paragraphs above as though fully restated herein.

84. That at all time pertinent hereto, Defendants Dennis M. Tushla and O'Connor & Tushla / O'Connor, Tushla & French owed Plaintiffs, James and Cheryl Meyer, duties to comply with the applicable standard of care and practice to provide competent legal evaluation, recommendations, advice, services, honesty, candor, information, consultation, and representation that arise out of the very special relationship derived from the retention of attorney by a client involving legal issues, such as those addressing/involving developing valid testamentary plans; drafting, creating and executing valid testamentary documents; timely and accurately identification/inventory of assets; timely management of assets; timely and valid amendment, revocation, reformation of testamentary documents; timely notifications/notices; timely, accurate and intended distribution of involved assets; timely involving competent professionals to assist in meeting these duties and responsibilities; timely referring clients and beneficiaries to competent professionals in the event of conflict(s) of interest and/or lack of competence; always keeping the best interests of their clients and beneficiaries of testamentary plans in mind; providing full and complete information and disclosures to their clients and beneficiaries; refraining from making any reckless or false representations; refraining from filing and/or recording non-meritorious documents and deeds; reducing the costs and fees incurred, amongst others.

85. That the Defendants breached the aforementioned duties / standards of care, and were negligent in causing the infringement of rights and/or loss of legal rights to Plaintiffs, as well as proximately causing damages, including mental anguish to James Meyer and Cheryl Meyer arising from the acts of malpractice and/or fraud, in one, more, or all of the following particulars:

86. Defendants failed to develop valid testamentary plans in regard to the drafting, execution,

implementation and effect of the Second Amendment to The Trust, particularly given that The Trust became irrevocable upon Otto Meyer's death in 2005, that there were significant statutory and tax code changes between the time of Otto's death in 2005 and the creation of the Second Amendment to the Trust in 2011, as advanced in 2013;

87. Defendants failed to draft, create, execute and/or implement valid testamentary documents in relating to the Second Amendment of The Trust consequently violating the intentions of the clients, especially considering that Defendants drafted The Trust in 1993 & 1994 to become irrevocable upon the death a settlor, in this case Otto Meyer in 2005 that there were significant statutory and tax code changes between the time of Otto's death in 2005 and the creation of the Second Amendment to the Trust in 2011, as advanced in 2013;

88. Defendants failed to timely and accurately identify/inventory Trust assets given that the Second Amendment of Trust was invalid, consequently violating the intentions of the clients;

89. Defendants failed to timely and accurately manage / provide competent advice on managing The Trust assets given that the Second Amendment of Trust was invalid, consequently violating the intentions of the clients;

90. Defendants failed to timely seek valid amendment, revocation and/or reformation of testamentary documents to comply with the intentions of the clients;

91. Defendants failed to timely seek valid amendment, revocation and/or reformation of testamentary documents, such as through petitioning to reform The Trust during the lifetime(s) of one or both of the Settlors consequently violating the intentions of the clients;

92. Defendants failed to timely seek valid amendment, revocation and/or reformation of testamentary documents, such as through petitioning to reform The Trust during the lifetime(s) of one or both of the Settlors consequently violating the intentions of the clients in that there were significant statutory and tax code changes between the time of Otto's death in 2005 and the creation of the Second Amendment to the Trust in 2011, as advanced in 2013;

93. Despite the clear mandate/dictate/requirement/term of The Trust, Defendant Tushla never divided the Trust assets into a Spouse's Trust and a Family Trust, and Defendant Tushla never disclosed or communicated to the Settlors/beneficiaries his failure to comply with this term of The Trust;

94. Defendants' failed to divide The Trust as mandated, or otherwise create a trust for surviving settlor/spouse Margaret Meyer, which would be a valid vehicle through which the Christie Lake real estate transfer to James Meyer could be effected in order to comply with the client intentions for same;

95. Defendants failed to otherwise timely effect The Trust by valid assignment, allocation, implementation of client intentions that the Christie Lake real estate transfer ownership to

James Meyer;

96. Defendants failed to provide The Trust clients with timely notifications or notice that the opportunities and the time for seeking to validly reform The Trust or otherwise amend The Trust to conform with client intentions - such as with the drafted content of the Second Amendment of Trust - was maximized during the lifetime of Margaret Meyer, and minimized or lost thereafter;

97. Defendants failed to provide The Trust clients with timely notifications or notice that the Second Amendment of Trust was invalid with no force and effect by law, and despite having charged money to draft and implement a valid testamentary plan/documents;

98. Defendants failed to provide The Trust clients with timely notifications or notice that the Defendants preparation and recording of the deeds transferring ownership of the Christie Lake property to Plaintiffs would cause unintended and unauthorized consequences, including uncapping property assessments and avoidable escalation of taxes – all of which were in violation of the Settlors' intensions, in violation of The Trust and the intentions of the Defendants' clients;

99. Defendants failed to ever lawfully distribute assets pursuant to the Second Amendment of The Trust;

100. Defendants failed to timely involve competent professionals to assist in meeting these duties and responsibilities, such as counsel/co-counsel to draft and implement valid Trust documents and amendments thereto – or to competently inform and advise clients, such as Plaintiffs and Margaret Meyer;

101. Defendants failed to timely refer clients and beneficiaries to competent professionals in the event of conflict(s) of interest and/or lack of Defendants' own competence, such as in the drafting of valid reform or valid amendments to The Trust;

102. Defendants failed to always keep the best interests of their clients and beneficiaries of testamentary plans in mind, such as with the invalidity of the Second Amendment of Trust, and the chaotic demolition it wreaked upon the Plaintiffs, the Meyer Family, assets, relationships, finances, emotions, lives;

103. Defendants failed to provide full and complete information and disclosures to their clients and beneficiaries –ever - that the Second Amendment was invalid;

104. Defendants made reckless or false representations – that the Second Amendment of The Trust was enforceable, valid, would result in the transfer of assets as it states;

105. Defendants filed and/or recorded non-meritorious documents and deeds after referring Plaintiffs to Harold G. Schuitmaker, and without any legal authority from the clients to do so, resulting in a firestorm of significant family, legal, financial, and personal injuries and damages;

106. Defendants failed to obtain consent; failed to obtain authority to draft an invalid set of Trust documents, such as the Second Amendment of The Trust, to foist that invalid document on the clients and family, and then to proceed in attempting to effectuate the Second Amendment, even after a known conflict was exposed;

107. Defendants recklessly and negligently blurred the lines between attorney-client and fiduciary- beneficiary relationships;

108. Other and additional acts/omissions that constitute violations from the standard of care and practice to be disclosed during the course of litigation.

109. Defendants never advised Plaintiffs of the spectrum of risk and costs that they were facing given the horribly deficient Second Amendment of The Trust, and that Plaintiffs would have thanked and gladly paid Defendants for their "advice," then ran and not walked from Defendants to save their lives; Plaintiffs would never have consented to the preparation or signature of Defendants' Second Amendment of The Trust, Deeds or anything prepared /offered by Defendants; never moved toward/changed position toward accepting ownership of the Christie Lake property knowing how badly Defendants failed and how badly Defendants concealed their reckless, fraudulent conduct; that Plaintiffs would have sought competent counsel to advise on legal rights and remedies of effectuating the intentions of Margaret Meyer, Otto Meyer and their own understanding of same, all the while maintaining their family relationships, finances and mental anguish over a horrible catastrophe of Defendants' making.

110. As a direct and proximate result of the negligence of the Defendants, Dennis M. Tushla and O'Connor & Tushla / O'Connor, Tushla & French, jointly and severally, as a result of the failures outlined above, including those arising from the acts of malpractice / fraud, breach of fiduciary duties, and as a result of the failures outlined herein, the Plaintiffs, James and Cheryl Meyer, have suffered damages which include, but are not limited to:

  A. Loss of economic assets, funds & the lost value of those funds;
  B. Lost opportunity to obtain assets, funds, to use those assets and funds;
  C. Costs & attorney fees;
  D. Loss of consortium and family relationships;
  E. Emotional anxiety & distress;
  F. Depression;
  G. Loss of enjoyment of life;
  H. Mental anguish;
  I. Loss of ability to pursue their legal rights;
  J. Embarrassment, humiliation & mortification
  K. Other and additional damages to be disclosed in the course of litigation.

WHEREFORE, Plaintiffs, James Meyer and Cheryl Meyer, respectfully request and pray that this Honorable Court will enter judgment in their favor, against the Defendants, jointly and severally, in an amount which is fair and equitable in excess of $25,000.00, plus costs,

interest and attorney fees and whatever additional damages to which Plaintiffs are rightly entitled.

ADDITIONALLY, and due to the egregious nature of the fraudulent conduct and concealment of same by Defendants, and the harm thereby caused to befall these Plaintiffs, James Meyer and Cheryl Meyer, respectfully request and pray that this Honorable Court will enter judgment for exemplary damages in their favor, against the Defendants, jointly and severally, in an amount which is fair and equitable in excess of $1,000,000.00, plus costs, interest and attorney fees and whatever additional damages to which Plaintiffs are rightly entitled.

Respectfully Submitted,

_____

Dated: August 19, 2016

Frank B. Melchiore (P41238)
LAWFM
Counsel for Plaintiffs
535 Central Avenue, Suite 306
Saint Petersburg, Florida 33701
(727) 822-5900